**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FABIAN MIRAMONTES,

                Petitioner,

vs.                         Case No.     3:10-cv-74-J-34JRK
                                                 3:08-cr-139-J-34JRK

UNITED STATES OF AMERICA,

                Respondent.
_____/

## **ORDER**

      This case is before the Court on Petitioner Fabian Miramontes' pro se Motion For Leave to Supplement § 2255 Petition And To Obtain Relevant Transcripts, (Doc. 1; Motion to Vacate), as well as his Memorandum in Support of Motion to Vacate, Set Aside or Correct Sentence, (Doc. 2; Supporting Memorandum), both filed on January 28, 2010.[1] In response, the Government filed the United States' Motion to Dismiss Petitioner's Pro Se Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 15; Motion to Dismiss). Petitioner then filed Petitioner's Objection to the Government's Motion to Dismiss. (Doc. 25; Response). Here, the Court considers Petitioner's Motion to Vacate and the Government's Motion to Dismiss, both of which are ripe for the Court to review.

---

[1] Citations to Petitioner's criminal case file, 3:08-cr-139-J-34JRK, are denoted as "Crim. Doc. __." Citations to Petitioner's civil § 2255 case file, 3:10-cv-74-J-34JRK, are denoted as "Doc. __."

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings,[2] the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (indicating that an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (concluding that a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.").

## I.   Background

On April 17, 2008, a grand jury sitting in the Middle District of Florida returned an indictment against Fabian Miramontes (Miramontes) and three co-defendants, in which it charged Miramontes with one count of conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and one count of possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), or in violation of 18 U.S.C. § 2 for aiding and abetting in this offense. See Indictment at 1–3 (Crim. Doc. 1). Pursuant to a Plea

---

[2]   Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

Agreement, the Government agreed to dismiss count two, the substantive offense, and Miramontes agreed to plead guilty to count one, the conspiracy offense. See Plea Agreement at 1–3 (Crim. Doc. 89). The Plea Agreement set forth the elements of the offense, including the quantity of cocaine, the minimum and maximum penalties that Miramontes faced, and the facts the Government intended to prove if Miramontes proceeded to trial. Id. at 1–2, 15–18. Significantly, the Plea Agreement also included a sentence-appeal waiver provision, in which Miramontes agreed to waive his right to directly or collaterally appeal his sentence. Id. at 10. The Plea Agreement specifically states that Miramontes:

> expressly waives the right to appeal [his] sentence or to challenge it collaterally on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution.

Id. (emphasis in original).

Miramontes appeared before the Honorable James R. Klindt, United States Magistrate Judge, on October 30, 2008, for a change of plea hearing. See Clerk's Mins. (Crim. Doc. 87). The Magistrate Judge conducted a thorough and extensive plea colloquy, which covered all of the matters required by Rule 11 of the Federal Rules of Criminal Procedure. See generally Plea Tr.[3] During the plea colloquy, Miramontes acknowledged that he was under oath, id. at 2, that he was pleading guilty because he was guilty, id. at

---

[3] The transcript of the change of plea hearing is found in the docket for Miramontes' criminal case (Crim. Doc. 156) and will be cited here as Plea Tr.

26–27, that his plea was a free, voluntary, and independent decision, id. at 25, 39–40, that no one forced, coerced, or threatened him to plead guilty, id. at 25, 40, and that he was not relying on any agreement, discussion, promise, or understanding other than those contained in the written Plea Agreement, id. at 40–41. Miramontes' responses established that he was aware of the charge and the essential elements the Government must prove beyond a reasonable doubt:

> THE COURT: Now in order to convict you of this charge, the government must prove the following beyond a reasonable doubt, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment; second, that you, knowing the unlawful purpose of the plan, willfully joined in it; and, third, that the object of the unlawful plan was to distribute cocaine, a Schedule II controlled substance, the amount of cocaine being five kilograms or more, as charged in the indictment.
>
> All right. Do you understand the elements of the charge which the government would have to prove beyond a reasonable doubt for you to be convicted?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about the essential elements of the charge, Mr. Miramontes?
>
> THE DEFENDANT: No.

Id. at 16; see also id. at 26. Miramontes' responses also established that he was aware of his constitutional rights, id. at 12, 26, and the consequences of his plea:

> THE COURT: Count One is punishable by a mandatory minimum term of imprisonment of ten years up to life imprisonment, a fine of not more than $4 million, or both the imprisonment and fine, a term of supervised release of at least five years up to life, a special assessment of $100. A special assessment is mandatory and is due on the date of sentencing.

4

> And should you violate the terms and conditions of supervised release, you could be sent back to prison for up to five years and receive an additional term of supervised release.
>
> Also, as we noted earlier, this conviction could have an adverse impact upon your ability to remain in the United States lawfully.
>
> Now, do you understand the maximum penalties that you face upon conviction?

THE DEFENDANT: Yes.

THE COURT: Including the mandatory minimum ten years' imprisonment?

THE DEFENDANT: Yes.

Id. at 17.

During the hearing, the Magistrate Judge specifically discussed the Plea Agreement with Miramontes, and Miramontes acknowledged that, before he signed the Plea Agreement, it was translated in its entirety and he understood it. Id. at 19. The Magistrate Judge also specifically reviewed the effects of the sentence-appeal waiver with Miramontes:

> THE COURT: Normally a defendant has the right to appeal his or her sentence on any ground that he or she thinks is appropriate. And that's including an incorrect application of the sentencing guidelines.
>
> Under your plea agreement, however, you waive and give up your right to appeal or otherwise challenge the sentence which is imposed upon you either directly or collaterally except under certain specific circumstances that are set out in paragraph B 5. So other than these specific circumstances, you are waiving and giving up your right to appeal or otherwise challenge your sentence collaterally.

> And here are the exceptions listed in your plea agreement: (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the court pursuant to the United States sentencing guidelines; (b), the grounds that the sentence exceeds the statutory maximum penalty; (c), the ground that the sentence violates the Eighth Amendment to the constitution.
>
> And of course, there's one other ground. And that is if the government exercises its right to appeal, then you're released from this waiver, and you can take whatever appeal you have a right to take absent this waiver.

Id. at 24. The Magistrate Judge explained the meaning of a collateral challenge, and Miramontes affirmed that he understood he was waiving his right to collaterally challenge his sentence and that he was doing so freely and voluntarily. Id. at 24–25.

The Government then proffered the following as the factual basis for the offense: A confidential informant negotiated a deal with Adan Gonzales, a co-conspirator, for the sale of five kilograms of powder cocaine. Gonzales had a meeting with Miramontes and Francisco Raygoza, another co-conspirator and Miramontes' uncle. Eventually, Gonzales brought the confidential source to Raygoza's residence where Raygoza and Miramontes were waiting. Miramontes, at Raygoza's direction, showed three kilograms of cocaine in three separate packages to the confidential source. The confidential source was told the remaining two kilograms were in one of the vehicles present at the residence. The arrest signal was given, and all of the suspects were placed under arrest. At the time of the arrest, law enforcement located and seized cocaine weighing 7.81 kilograms in total. See id. at 28–32. The Court asked Miramontes about the proffered facts:

> THE COURT: [The Government] just read a long set of facts. And you were listening to him read those facts. Those parts

of the facts that he read about you, were those – were those accurate?

THE DEFENDANT: I am being mentioned only in relation to the three kilos. In regards to the rest, the money, the weapons, about that, I knew nothing.

THE COURT: Well, I'm not asking that, really, right now. That would be relevant at some other time, possibly. But the parts about you – ***everything that [the Government] said about you, was that true***?

THE DEFENDANT: ***Yes***.

Id. at 34 (emphasis added). Miramontes affirmed the Magistrate Judge's personalization of the elements, id. at 34–35, and Miramontes admitted that he did, knowing the unlawful purpose of the plan, willfully join in it, id. at 35. In doing so, Miramontes equivocated about the quantity of drugs at issue in his offense:

THE COURT: All right. Do you admit that the object of the unlawful plan was to distribute cocaine, a Schedule II controlled substance, the amount of cocaine being five kilograms or more?

THE DEFENDANT: Well, more, no.

THE COURT: I'm sorry? Would you repeat that?

THE DEFENDANT: More than five kilos, no. Those were three kilos.

THE COURT: Well, do you admit that the government can prove that -- a conspiracy in which you were involved, that the plan was to distribute more than five kilos, even if you only handled three?

THE DEFENDANT: Well, I only know about three.

THE COURT: All right.

Id. at 35–36. Miramontes' counsel then explained Miramontes' response, informing the Magistrate Judge that Miramontes' position was that he only had direct knowledge of the

three kilograms he handed to the confidential source, but that he was part of the conspiracy that contemplated the sale of five or more kilograms. Id. at 36. Noting that the Government would not agree to a lesser-included offense, Miramontes' counsel stated that he explained to Miramontes that he could go to trial to have the quantity factually determined, "plead guilty pursuant to this plea agreement, or plead straight up pursuant to the indictment, [but either way] he was basically looking at a contention that it was at least five kilos and up to eight, regardless of what his specific knowledge was at the time that the deal was being done." Id. at 36–37. The Magistrate Judge then confirmed with Miramontes that the object of the plan involved five kilograms or more, as charged in the indictment. Id. at 37–38.

> THE COURT: But let me ask you, Mr. Miramontes:  Do you admit that the object of the unlawful plan was to distribute cocaine, a Schedule II controlled substance, the amount of cocaine being five kilograms or more, as charged in the indictment?
>
> THE DEFENDANT: Yes.

Id. at 37-38. Based upon Miramontes' admission to the elements of the charged offense and the Magistrate Judge's view that the offense did not require direct knowledge of the quantity of drugs, see id. at 37, the Magistrate Judge recommended that Miramontes' guilty plea be accepted, and the Court accepted his plea on November 5, 2008. see id. at 44; see also Acceptance of Plea of Guilty, Adjudication of Guilt, and Notice of Sentencing (Crim. Doc. 97).

On January 30, 2009 at sentencing, the Court addressed the same drug quantity issue in response to an objection advanced by defense counsel. Defense counsel stated that Miramontes wished to tell the Court that he only had direct knowledge of three

kilograms, but defense counsel informed the Court that he had explained to Miramontes

the law concerning the quantity of drugs for which he would be held responsible:

> DEFENSE COUNSEL: I would explain to him that that was his choice, and that if he – that if ultimately the conspiracy was for the full 5 kilograms, then, theoretically, he could be found guilty of that and that the – he didn't have to know all of the details of everything about the drug deal that was to take place, but that theoretically, he could be held responsible for the larger amounts.
>
> So Mr. Miramontes wanted me to at least inform the Court that this was – this additional 2 kilograms were news to him at the time of the arrest, and he really had no – he had not contemplated that they would do more than a 3-kilogram deal.

Id. at 10–11. The Government responded, stating that "the entire transaction was

captured on a video and audio recording," which showed that three kilograms were

handed to the confidential source and the confidential source was told two more kilograms

were in one of the vehicles. Id. at 12. Defense counsel clarified:

> I understand my client's position to plead guilty. I still, in my heart and in my mind, have a difficult time reconciling it, but obviously my client was worried about the consequences of going to trial and what could happen if he's found guilty. And so he accepted responsibility and authorized the guilty plea to the 5 kilograms, because it arguably was foreseeable.

Id. at 18. This Court found the factual basis sufficient to support the 5 kilograms drug

amount because the Court determined that "Mr. Miramontes acted on the request to find,

to obtain 5 kilograms of cocaine and attempted to obtain 5 kilograms of cocaine," thus, "it

was reasonably foreseeable that the transaction would ultimately be a 5-kilogram

transaction." Sentencing Hearing Tr. at 21. In the end, the Court sentenced Miramontes

to the mandatory-minimum term of imprisonment of 120 months, which was the low end

of the advisory guidelines range, 120-135 months, see PSR, ¶ 54, followed by five years

of supervised release. See Sentencing Hearing Tr. at 33–35;[4] Judgment at 2-3 (Crim. Doc. 110). Pursuant to the terms of the Plea Agreement, Miramontes did not pursue a direct appeal.

On January 28, 2010, Miramontes filed the instant Motion to Vacate, asserting that his counsel provided ineffective assistance in his failure to properly advise Miramontes concerning the decision to plead guilty. See Motion to Vacate at 6–11. The Government moved to dismiss Miramontes' Motion to Vacate based on the knowing and voluntary waiver of his right to attack his sentence, either directly or collaterally. See generally Motion to Dismiss.[5] On June 17, 2013, Miramontes filed his Response to the Government's Motion to Dismiss, reasserting his claim that his attorney provided ineffective assistance. See generally Response.[6]

---

[4] The transcript of the sentencing hearing is found in the docket for Miramontes' criminal case (Crim. Doc. 154) and will be cited here as Sentencing Hearing Tr.

[5] On January 2, 2011, this Court dismissed Miramontes' case without prejudice based on Miramontes' failure to file a response to the Motion to Dismiss, as well as his failure to comply with this Court's Order directing petitioner to respond no later than December 17, 2012. See Orders (Docs. 21, 22). On May 1, 2013, Miramontes filed a Motion for Reconsideration of the dismissal, claiming he had not received the Court's order. (Doc. 23). The Court granted Miramontes' Motion for Reconsideration of the Motion to Vacate and directed the Clerk of the Court to reopen the case. Order (Doc. 24).

[6] In his Response, Miramontes advanced new arguments, contending that his counsel was also ineffective for (1) failing to inform him that would give up his rights to appeal or collaterally attack his sentence and (2) not requesting an interpreter to be present. It is improper to include new claims in a response instead of filing a motion for leave to amend. See Fed. R. Civ. P. 7(b)(1); see also McGinley v. Fla. Dep't of Highway Safety & Motor Vehicles, 438 F. App'x 754, 757 (11th Cir. 2011) ("In our circuit, a request for leave to amend is not properly made when it is 'imbedded within an opposition memorandum.'") (citations omitted). If Miramontes wished to have the Court address these additional claims on the merits, he should have included them in the Motion to Vacate or filed a motion seeking leave to amend his original Motion to Vacate. See Fed. R. Civ. P. 15(a)(2). In an abundance of caution, however, this Court will briefly address these non-meritorious claims. First, the Court expressly informed Miramontes that he would give up his rights to directly appeal or collaterally attack his sentence, and Miramontes affirmatively responded that he understood and that he made this waiver freely and voluntarily. See Plea Tr. 24–25. Therefore, even if Miramontes' bare assertion that his counsel failed to tell him about the waiver is accepted, this Court specifically questioned Miramontes regarding the sentence-appeal waiver, therefore, the record establishes that he understood the waiver's full significance. See United States v. Williams, 396 F.3d 1340, 1341 (11th Cir. 2005), cert. denied, 546 U.S. 902 (2005) (citing United States v. Bushert, 997 F.2d 1343, 1350–51 (11th Cir. 1993)). Second, the record also establishes that a translator was present for all proceedings, including the change of plea hearing, see Plea Tr. at 4, and the sentencing hearing, see Sentencing Hearing

## II.     Applicable Law

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a) (2006). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184–86 (1979); United States v. Teague, 953 F.2d 1525, 1534 n.11 (11th Cir. 1992) (explaining that a petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack).

A petitioner's right to directly or collaterally challenge his sentence, even when alleging ineffective assistance claims, may be barred when the petitioner effectively waived that right pursuant to a plea agreement. Williams v. United States, 396 F.3d 1340, 1341–42 (11th Cir. 2005) (holding that a valid sentence-appeal waiver precluded a subsequent collateral attack based on a claim of ineffective assistance of counsel during sentencing), cert. denied, 546 U.S. 902 (2005). In establishing this rule, the Eleventh Circuit reasoned that "a contrary result would permit a defendant to circumvent the terms

---

Tr. at 4–5. Miramontes acknowledged on the record that both the plea agreement and the PSR were translated to him in their entirety. Plea Tr. at 4; Sentencing Hearing Tr. at 4–5. Moreover, Miramontes repeatedly indicated on the record at both hearings that he fully understood the proceedings and the court's questions. Plea Tr. at 3, 4, 7, 10, 14, 15–22, 26–27. Therefore, this claim is without merit because it is based on an allegation that is affirmatively contradicted by the record. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless." Id. at 1342. To be enforceable such that a plea agreement's sentence-appeal waiver will bar a § 2255 challenge, the waiver must be made knowingly and voluntarily, which requires the Government to demonstrate either that: (1) the district court specifically questioned the petitioner regarding the sentence-appeal waiver during the plea colloquy, or (2) the record clearly shows that the petitioner otherwise understood the waiver's full significance. See Williams, 396 F.3d at 1341 (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). To ascertain whether a guilty plea is knowing and voluntary, a reviewing court is instructed to specifically address whether the "three core concerns" under Federal Rule of Criminal Procedure 11 are met. Those concerns are that the petitioner (1) enters the guilty plea free from coercion; (2) understands the nature of the charges; and (3) understands the consequences of his plea. United States v. Harrison, 505 F. App'x 876, 879 (11th Cir. 2013) (per curiam) (citing United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)). This Court notes that there is a strong presumption that statements made under oath during a plea colloquy are true, see United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994), and a petitioner bears a heavy burden in showing them to be false, see United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988); see also United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (giving considerable weight to the policy that if the "plea taking procedure is careful and detailed, the [petitioner] will not later be heard to contend that he swore falsely"). Consequently, a petitioner's representations in a plea colloquy may constitute a "formidable barrier in any subsequent

collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73–74 (1977); Thompson v. Wainwright, 787 F.2d 1447, 1460–61 (11th Cir. 1986).

When a petitioner challenges the validity or voluntariness of the plea or waiver itself, however, a sentence-appeal waiver will not bar that Sixth Amendment ineffective assistance of counsel claim. See Baird v. United States, 445 F. App'x 252, 254 (11th Cir. 2011) (per curiam) (noting as an example, a claim that counsel coerced or misadvised petitioner prior to the entry of the plea); see also Patel v. United States, 252 F. App'x 970, 971, 974–75 (11th Cir. 2007) (per curiam) (finding that a collateral attack waiver did not bar a § 2255 challenge to the validity of guilty plea); Cowart v. United States, 139 F. App'x 206, 207–08 (11th Cir. 2005) (per curiam) (holding that a sentence-appeal waiver that only expressly limits a petitioner from collaterally challenging his "sentence" does not bar an ineffective assistance claim that challenges the validity of his plea or the sentence-appeal waiver itself). Therefore, despite the presence of a sentence-appeal waiver, a court must address the merits of a § 2255 petition that challenges the validity of the plea or waiver due to the ineffective assistance of counsel. Id.

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner who claims counsel's ineffective assistance undermined the validity of his guilty plea, must demonstrate both: (1) that his counsel's alleged conduct amounted to constitutionally deficient performance and (2) that his counsel's deficient performance caused sufficient prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984); Hill v. Lockhart, 474 U.S. 52, 58 (1985) (applying the two-part Strickland test to ineffective assistance claims arising out of the plea process); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first prong, that

13

his counsel's conduct was deficient, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that counsel's performance, in light of all of the circumstances, fell outside the "wide range of professionally competent assistance." Id. "[C]ounsel is strongly presumed to have rendered adequate assistance," Strickland, 466 U.S. at 690, and to rebut that presumption and demonstrate that counsel's performance was unreasonable, "[t]he burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (citing Strickland, 466 U.S. at 688). This burden of persuasion, though not insurmountable, is a heavy one. See id. at 1314–15 (citing Kimmelman v. Morrison, 477 U.S. 365 (1986)). If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. See id. at 1314 n.15.

To satisfy the second prong, that counsel's deficient performance sufficiently prejudiced the defendant, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Weeks, 26 F.3d at 1036–37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met both requirements of deficient performance and prejudice to warrant relief, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court . . . to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance

deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

When evaluating counsel's plea advice, the determination is not "whether a court retrospectively consider[s] counsel's advice to be right or wrong," but instead the inquiry is "whether the advice was within the range of competence demanded of attorneys in criminal cases." McMann v. United States, 397 U.S. 759, 769–71 (1970) (concluding that a guilty plea based on "reasonably competent advice" is "not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession"). The Supreme Court has instructed:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All of the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts as he understands them, would be viewed by a . . . judge or jury . . . . Waiving trial entails the inherent risk that the good faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

Id. at 770. Thus, when a client pleads guilty, counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial. Walker v. Caldwell, 476 F.2d 213, 218 (5th Cir. 1973).[7] To provide this understanding to the accused, counsel must make an independent examination of the case and offer his informed opinion as to the best course to be followed in protecting the interests of his client.  Id. at 217 (citing Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)).

---

[7] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

> The right to competent plea bargain advice is at best a privilege that confers no certain benefit. An accused may make a wise decision even without counsel's assistance, or a bad one despite superior advice from his lawyer. The Supreme Court has commented that the unpleasant choice is one the defendant ultimately must make for himself, and that the decision is often inescapably grounded on uncertainties and a weighing of intangibles.

Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984). To establish the prejudice prong in a claim of ineffective assistance with respect to the entry of a plea, the petitioner must show that but for the alleged ineffective advice, the petitioner would not have pleaded guilty and would have proceeded to trial. See Hill, 474 U.S. at 59. The Supreme Court has noted that considerations, such as the defendant's appraisal of the prosecution's case and the apparent likelihood of securing leniency with a guilty plea, frequently present imponderable questions for which there are no certain answers. Brady v. United States, 397 U.S. 742, 756 (1970). "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to attack if the defendant did not correctly assess every relevant factor entering into his decision." Id. at 757.

## III.   Discussion

In his Motion to Vacate, Miramontes contends that his counsel's advice relating to the entry of a guilty plea was deficient and prejudicial. See Motion to Vacate at 6–11. The Government notes that Miramontes assured the Court that his plea was his own decision and that he read and understood the plea agreement, thus the Government argues that Miramontes' claims should be barred as having been effectively waived pursuant to the sentence-appeal waiver outlined in his Plea Agreement. See Motion to Dismiss at 2–5. The Court finds that the record supports the conclusion that Miramontes' guilty plea was knowing and voluntary. However, because Miramontes' claims challenge the validity of

the plea, this Court will address his claims on the merits. See Patel, 252 F. App'x at 974–75.

### A.    Ineffective Assistance of Counsel

Miramontes contends that his attorney ineffectively advised him with regard to the effect of his decision to enter a guilty plea. Specifically, Miramontes asserts that his attorney did not accurately and completely inform him about the plea options, Motion to Vacate at 6–11, and that his attorney incorrectly advised him to accept the Government's plea offer, id. at 8–11. This Court finds that Miramontes has not offered any support to overcome the strong presumption of verity that attach to his representations during the plea proceeding where he affirmed that he knew the nature of the charges and the consequences attendant to his plea, and that he entered into the plea agreement voluntarily. See Medlock, 12 F.3d at 187. Miramontes' claims of ineffective assistance are further belied by the record that shows he affirmed that he was satisfied with defense counsel's representation, see Plea Tr. at 42, and the record which shows that Miramontes' counsel provided Miramontes with an understanding of the law in relation to the facts and, after his independent examination of the case, offered his informed opinion. See Walker, 476 F.2d at 217–18. Therefore, in evaluating the totality of counsel's performance, this Court finds defense counsel's representation to be reasonable and constitutionally adequate. See Strickland, 466 U.S. at 697 (explaining that a court need not address both components of the inquiry if the defendant makes an insufficient showing on one).

### i.    Advice Concerning Plea Alternatives

In the Motion to Vacate, Miramontes contends that his counsel failed to advise him accurately because counsel did not tell Miramontes that he could split his plea. See Motion to Vacate at 6-7. Specifically, Miramontes asserts that, given such advice, he would have pleaded guilty to count two and not guilty to count one, so he could proceed to trial and contest the quantity in count one based on lack of direct knowledge. Id.

Miramontes' counsel informed Miramontes that he had the option of proceeding to trial, pleading guilty straight up, or accepting the Government's plea deal. Plea Tr. at 36–37. Although Miramontes claims his counsel should have informed him of the ability to enter a partial open plea, he has not provided any case law to support his ability to do so, and the Court has found no support for this position. Consequently, Miramontes has not shown that his counsel's failure to provide advice about this option constituted deficient performance because this allegedly missing advice does not appear to have been a viable option in this case. See Hill, 474 U.S. at 56 (stating that the standard requires counsel to inform the defendant of **available** courses of action).

Miramontes cites United States v. Booth, 432 F.3d 542 (3d Cir. 2005), to support his position that counsel should have informed him of the ability to enter an open partial plea. In Booth, the Third Circuit explained that an open plea to **both** charges in the indictment was a reasonable and viable option about which the defense attorney should have informed the defendant because the defendant did not want to cooperate with the prosecution, which was a required term of the proposed plea deal. Id. at 544. In this case, Miramontes was informed of the option to enter a straight-up open plea to **both** charges, Plea Tr. at 36–37, but he had no reason to pursue this option because he was not

opposed to cooperation. Miramontes asked his counsel to set up cooperation proffers, Supporting Memorandum at 4, and his attorney did, Sentencing Hearing Tr. at 27 (explaining to the Court that everyone pled and Miramontes was "not in the game," leaving Miramontes with nothing to offer). Additionally, unlike the open plea to both charges discussed in <u>Booth</u>, the partial open plea Miramontes wanted to pursue is contradictory. By pleading guilty to the aiding and abetting charge, Miramontes would be sentenced as a principal and would be admitting the substantive offense, the possession, with intent to distribute, of **five kilograms or more** of cocaine, as charged in the indictment.[8] Pleading not guilty to count one, the conspiracy charge, likely would be senseless unless Miramontes planned to contest the distinct element between the two counts, the agreement, <u>see</u> <u>United States v. Johnson</u>, 89 F.3d 778, 783 (11th Cir. 1996) (explaining that the defendant could admit the substantive offense and contest the conspiracy offense, but that the government would only have to prove the act of conspiring at trial), which he does not, <u>see</u> Plea Tr. at 34–36; Sentencing Hearing Tr. at 34 ("I do make myself responsible for 3 kilograms"). In sum, Miramontes could not plead guilty to count two, possession, with intent to distribute, of five kilograms or more, then proceed to trial on count one, the conspiracy to possess with intent to distribute five kilograms or more, in an effort to contest the quantity of drugs involved in his offense. Therefore, Miramontes' attorney cannot be found ineffective for failing to advise him of a plea option that Miramontes has not shown to have been a viable option.

Moreover, Miramontes has not shown a reasonable probability that he would have entered a partial open plea had counsel advised him of the option and its sentencing

---

[8] Under Federal Rule of Criminal Procedure 11, an indictment that sets forth a specified drug quantity amount requires a factual basis admitted to under oath.

ramifications.   That is because pleading guilty to aiding-and-abetting (without a plea agreement) while pleading not guilty to the conspiracy charge could have risked a higher sentence for Miramontes.  Both the aiding-and-abetting charge and the conspiracy charge carried the same statutory minimum and maximum sentences, 21 U.S.C. § 846 (same sentence applies to both conspiracy and underlying drug offenses), as well as the same base offense level under the Guidelines, <u>see</u> U.S.S.G. § 2D1.1(c) (offenses involving at least 5 kilograms but less than 15 kilograms of Cocaine receive a base offense level of 32).  Therefore, even if Miramontes proceeded to trial and was acquitted of the conspiracy charge, he would still have faced the same statutory sentencing range and base offense level for pleading guilty to the aiding-and-abetting charge.  But, by pleading not guilty to one of the charges, Miramontes would have jeopardized any offense level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a)[9], thereby risking a higher offense level and a longer sentence.  Miramontes thus only could have hurt himself by entering an open plea to Count Two (aiding-and-abetting) and going to trial on Count One (conspiracy).  Therefore, even if counsel had advised Miramontes about entering a partial open plea, there is not a reasonable probability that Miramontes would have selected that choice if he had understood the implications for sentencing.  As such, Miramontes has not shown that he suffered prejudice from counsel not advising him about entering an open plea to aiding-and-abetting and forcing a trial on the conspiracy charge.

In this case, the record affirmatively demonstrates that counsel sufficiently informed Miramontes of all available options, and Miramontes has not provided any evidence to show the viability of a partial open plea option or that not advising Miramontes

---

[9]     U.S.S.G. § 3E1.1 explains that a defendant who <u>clearly</u> accepts responsibility can receive a two level departure.

of this option was objectively unreasonable.[10] Additionally, Miramontes has not shown any prejudice. Accordingly, this claim is denied because Miramontes has not shown either deficient conduct or resulting prejudice.

### ii.    Counsel's Opinion

Miramontes also asserts that counsel was incorrect when he advised that it was in Miramontes' best interest to accept the plea offer, advising him that "there was no better route to take" because "the plea would ultimately result in the same sentence if he succeeded at trial to the three kilograms." See Motion to Vacate at 8–10. Preliminarily, this Court notes that Miramontes affirmed on the record under oath that he was satisfied with defense counsel's representation, Plea Tr. at 42, and that the plea decision was his own independent decision, id. at 40; see Medlock, 12 F.3d at 187 (applying a strong presumption that statements made under oath during a plea colloquy are true).  Moreover, Miramontes' contention is belied by the record.  Miramontes' lawyer stated on the record that he had told Miramontes "it would **probably be in his best interest to go to trial** and see if the Court or a jury would find him guilty of the lesser-included offense. . . . [but], Mr. Miramontes did not want to do that and wanted to plead guilty to the Court in hopes of receiving all the benefits of a guilty plea, with the exception of going underneath the ten-year minimum mandatory." Sentencing Hearing Tr. at 9-10 (emphasis added); see also Blackledge, 431 U.S. at 73-74 (the representations of the defendant, his lawyer, and the prosecutor at a plea hearing, plus any findings made by the judge accepting the plea,

---

[10] Contrary to Miramontes' contention in his Supporting Memorandum that the plea agreement documents confused him, see Supporting Memorandum at 10, Miramontes affirmed on the record that he admitted the truth of the charge and that he fully understood the plea agreement and the plea proceeding, see Plea Tr. at 27, and Miramontes admitted that the conspiracy, in which he was involved, contemplated the sale of more than five kilograms of cocaine. see id. at 37–38.

constitute a formidable barrier in subsequent collateral proceedings).   Despite the presence of an interpreter at the sentencing, Miramontes did not dispute this representation.

Notwithstanding the fact that the record reflects that Miramontes' counsel gave Miramontes advice different from that which he alleges here, this Court finds that neither the advice Miramontes claims was given, nor the advice shown in the record, constitutes deficient conduct. See McMann, 397 U.S. 759, 769–71 (explaining that the advice is not evaluated as wrong or right, but rather the inquiry is whether the advice is within the range of competence); Hill, 474 U.S. at 56 (explaining that the advice is reasonable so long as it is within the range of competence demanded of attorneys). In reviewing the totality of the circumstances, this Court finds that Miramontes' counsel acted competently in making an independent examination of the case and offering an informed opinion. See Walker, 476 F.2d at 217. Miramontes' counsel explained to Miramontes that by admitting his involvement in the drug transaction, under this circuit's case law, he made himself liable for all foreseeable conduct of his co-conspirators. See, e.g., United States v. LaFraugh, 893 F.2d 314, 317 (11th Cir. 1990) (holding a co-conspirator liable for reasonably foreseeable acts of co-conspirators, even those he did not cause), cert. denied, 496 U.S. 911 (1990); United States v. Adams, 1 F.3d 1566, 1580 (11th Cir. 1993) ("Conspirators are responsible for sentencing purposes for the reasonably foreseeable acts of coconspirators taken in furtherance of the conspiracy . . . ."), cert. denied, 510 U.S. 1198 (1994); United States v. Chavez, 584 F.3d 1354, 1365–67 (11th Cir. 2009) (concluding the district court did not err in applying the quantity of drugs involved in the whole conspiracy when sentencing a co-conspirator because it was reasonably foreseeable that

the conspiracy would involve a larger amount of drugs than that with which he was directly involved).

Both opinions, accept the plea deal or proceed to trial, are reasonable. Miramontes has not shown that no competent counsel would have provided either opinion. The Government had strong evidence of Miramontes' guilt given that Miramontes was arrested while selling cocaine to a confidential informant who was equipped with electronic recording devices. See Plea Tr. at 28–32; Sentencing Hearing Tr. at 12. Accordingly, it would have been reasonable to advise him to accept a plea deal where the Government offered a three-level reduction of his offense level and the dismissal of one of the charges. Similarly it would have been reasonable to advise Miramontes to proceed to trial because Miramontes' position contesting the quantity did present a potentially triable issue.[11] Miramontes has not shown that either opinion is objectively unreasonable. Under these circumstances, Miramontes cannot claim coercion after entering a plea of guilty relying on counsel's best professional judgment. See United States v. Lagrone, 727 F.2d 1037, 1038 (11th Cir. 1984).

Moreover, neither the advice given nor the advice allegedly missing has been shown to have resulted in prejudice because Miramontes has not shown that but for

---

[11] The Supreme Court has held that any fact that increases the mandatory minimum is an element that must be submitted to the jury. Alleyne v. United States, 133 S. Ct. 2151, 2155 (2013). In the context of a guilty plea, such an element may be established when the Defendant admits the facts in question. United States v. Oliver, 544 F. App'x 858 (11th Cir. 2013). Miramontes, in his guilty plea and at sentencing, admitted to the Government's proffer of the factual basis, which included the fact that the conspiracy, as a whole, involved five kilograms or more, and he did not object to the inclusion of those facts, as they related to the entire conspiracy. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005) (concluding that sentence enhancement based on drug quantity did not violate Booker where the defendant did not dispute the facts in the PSI); United States v. Burge, 407 F.3d 1183, 1191–92 (11th Cir. 2005) (rejecting Booker challenge under plain-error review because the defendant admitted facts underlying the enhancement by abandoning at sentencing his objections to various factual statements in the PSI), cert. denied, 546 U.S. 981 (2005).

counsel's error, he would have insisted on going to trial. See Hill, 474 U.S. at 58–59; Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (concluding that an after-the-fact statement expressing a desire to change plea decision was alone insufficient to establish prejudice). Miramontes argues that he would have proceeded to trial and established a lesser drug amount, three kilograms, which would have subjected him to a lower penalty. See Supporting Memorandum at 10. However, this assertion is affirmatively contradicted by the record from the change of plea hearing. See Blackledge, 431 U.S. at 73–74.

Additionally, although the applicable mandatory minimum for an offense involving three kilograms would have been five years instead of ten years, see 21 U.S.C. 846, Miramontes' guideline term of imprisonment would have been 97-121 months, which still encompasses the ten-year sentence he received, see U.S.S.G. § 2d.1.1(c)(4) (calculating his base level offense for 2-3.5 kilograms of cocaine at level 28); see PSR ¶ 34 (calculating his criminal history category as III).[12] Thus, Miramontes' claimed defense asserting direct knowledge of only three kilograms, even if successful, would not justify an acquittal and would give him a guidelines range of imprisonment that encompassed the ten-year term he received.[13] Therefore, upon review of the record, Miramontes'

---

[12] The PSR flatly contradicts Miramontes' assertion that he has "no criminal history." See Supporting Memorandum at 10; PSR at 6–7.

[13] Based on the current PSR, the advisory guidelines range for the substantive offense, count two, to which Miramontes asserts he wanted to plead guilty, would likely have been 151-188 months. Instead, under the Plea Agreement, Miramontes' guidelines range was 108-135 months with the 120 month mandatory minimum. See U.S.S.G. § 2D1.1 (advising a base level offense of 32 for a crime involving more than five kilograms of cocaine); see PSR, ¶¶ 6-7 (calculating his criminal history category as III). Moreover, this Court notes that proceeding to trial could have resulted in convictions on both offenses because the conspiracy offense does not merge with the aiding and abetting offense. See Nye & Nissen v. United States, 336 U.S. 613, 620 (1949).

second claim of ineffective assistance, which is based on counsel's opinion during the plea process, is denied.

## IV.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253 (c)(1)

If Miramontes seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2). To make this substantial showing, Miramontes "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED**:

1. The Government's Motion to Dismiss Petitioner's Pro Se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Doc. 15) is **GRANTED**.

2. Miramontes' Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 2) is **DENIED**.

3. The Clerk shall enter judgment in favor of the Government and against Miramontes and close the file.

4. If Miramontes appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** in Jacksonville, Florida, this 7th day of January, 2015.

MARCIA MORALES HOWARD
United States District Judge

i25
Copies to:
Counsel of Record
Petitioner